NUMBER 13-10-00339-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT OF TEXAS

 

                                  CORPUS CHRISTI -
EDINBURG

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



BILLIE JEAN AVERY,                                                                            Appellant,

 

v.

 

THE STATE OF TEXAS,                                                                
Appellee.

 

 



On appeal from the 156th District
Court

of Bee County, Texas.

 

 



 O P I N I O N

 

Before Chief Justice Valdez and
Justices Rodriguez and Perkes

Opinion by Chief Justice Valdez

 

            Appellant, Billie Jean Avery, was
charged by indictment with obtaining an increased quantity of a Schedule II controlled
substance through the use of a fraudulent prescription form, a second-degree
felony.[1] 
See Tex. Health & Safety Code
Ann. § 481.129(a)(5)(B), (d)(1) (Vernon 2010).  After a jury trial,
Avery was convicted of the underlying offense and was sentenced to twenty-five
years’ confinement in the Institutional Division of the Texas Department of
Criminal Justice with a $1,500 fine.[2] 
On appeal, Avery argues that the trial court erred in denying her motion for a
directed verdict because the State failed to present sufficient evidence
proving the manner and means of the offense stated in the indictment.  Specifically,
Avery contends that there is no evidence that she used a “fraudulent
prescription form” to obtain an increased dosage of a controlled substance, as
alleged in the indictment.  We reverse and vacate the judgment, and remand for
entry of a judgment of acquittal.

I.             
Background

On January 15, 2010,
Donald Breech, M.D. treated Avery for pain associated with her knee.[3]  Dr. Breech
prescribed forty 2.5-milligram tablets of Lortab, a controlled substance
containing hydrocodone, for Avery.  Dr. Breech used his own prescription form
when filling out the prescription, and at trial, he noted that he prescribed
Avery the lowest dose of Lortab that is manufactured because he believed that
Avery was possibly abusing the drug in some manner.  Dr. Breech further opined
that he did not give Avery permission to alter the prescription and that when
it was later presented at Wal-Mart, the prescription form constituted a
“fraudulent prescription form.”

Later that day, Avery,
her common-law husband, Robin Bright, and Bright’s mother went to a Wal-Mart in
Beeville, Texas, to fill the prescription.  Adela Munoz, a certified pharmacy
technician working for Wal-Mart, testified that Avery presented the prescription
form to her.  Munoz described the incident as follows:

What I did do, ma’am, is—everything now is computerized, so
we have to actually scan our prescriptions into the system to have a visual for
our records.  The prescription, itself, when I scanned it in came out—this area
right here came out shaded black.  So right above it, I put
“seven-point-five.”  And then the pharmacist did receive the prescription on
her screen, our visual.  And she asked me, you know, “What is this above
here?”  And I told her I did that.  Because through the system, all you could
see was just a black spot where it had been changed.[[4]]

 

Munoz admitted to writing the “seven-point-five”
notation of the prescription form, presumably at the direction of Avery; however,
Munoz denied making any “cross-out marks” or shading on the form.[5]

            Once Avery left, Munoz became
suspicious about the form and the “cross-out marks,” so she informed Stephani
Trbula, M.D., the staff pharmacist on duty that day.  Dr. Trbula testified that
she did a “four-point” inspection of the prescription form, which included four
different things:

the
name of the patient, the name of the drug, the directions[,] and the doctor. 
And during my four-point evaluation, I also verify that it is a legitimate
prescription.  And if there are any alterations, I check to see, you know, if
my technician made the alteration or if it was the doctor that made the
alteration and we make phone calls at that time if there’s anything that I need
to clarify before I send [the prescription] on [to be filled].

 

Dr. Trbula noted that the prescription form was “a
typical—just a plain prescription pad.  This was—I believe—yeah, it does have a
security guard on the back.”[6] 
Nevertheless, when conducting her inspection, Dr. Trbula was troubled by what
appeared to be alterations to the form.  She first spoke to Munoz, who admitted
to writing the “‘seven-point-five’ in parentheses” on the form.  However, Dr.
Trbula was troubled by the “cross-outs” on the form, so she called Dr. Breech’s
office.  Dr. Trbula spoke to “Karen,” who purportedly is a nurse in Dr.
Breech’s office.  Karen informed Dr. Trbula that no one in Dr. Breech’s office
made the “cross-outs” on the prescription form and that the form was supposed
to prescribe “two-point-five milligrams” of Lortab for Avery.  Dr. Breech
confirmed these facts in his testimony.  Karen concluded that the form had been
altered after Avery left Dr. Breech’s office; thus, Dr. Trbula was instructed
to not dispense the medication and to call law enforcement.

            Shortly thereafter, Bright returned to
the Wal-Mart, and when he acknowledged that he was there to pick up the prescription,
police handcuffed him and escorted him out to the Wal-Mart parking lot.  Bright
told police that Avery was waiting in the car for him, and he directed police
to the car.  Upon questioning by police, Avery admitted to altering the
prescription form.  Bright was subsequently released from police custody, and
Avery was arrested.

In the indictment, the
State alleged that on or about January 15, 2009, Avery “through use of a fraudulent
prescription form . . . knowingly attempt[ed] to obtain a
controlled substance, namely, Lortab, by increasing the dosage.”  See id.
§ 481.129(a)(5)(B).  The language of the indictment clearly indicates that the
State charged Avery with violating section 481.129(a)(5)(B) of the health and
safety code, rather than section 481.129(a)(5)(A), which states that a
defendant commits an offense by knowingly obtaining or attempting to obtain an
increased quantity of a controlled substance “by misrepresentation, fraud,
forgery, deception, or subterfuge.”  See id. § 481.129(a)(5)(A)-(B).

The case was tried to a
jury on May 17-18, 2010.  At the close of the State’s case-in-chief, Avery
moved for a directed verdict, asserting that there was no evidence that she attempted
to obtain an increased quantity of a controlled substance “through use of a
fraudulent prescription form,” as alleged in the indictment and the jury
charge.  Specifically, counsel for Avery argued that:  “The testimony is that
the prescription form is not fraudulent.  It is the prescription form of the
doctor.  What the testimony has been is that the prescription itself, that the
doctor wrote on his form was altered.”  The State countered that “the form is
not limited to what has been pre-printed on the document”; thus, the alteration
of the prescription form resulted in a “fraudulent prescription form.”  

In analyzing section
481.129(a)(5)(A) and (B), the trial court noted that:

[T]he
problem is the State has used a fraudulent prescription form.  Plain meaning of
that term would be somebody wrote “Dr. A.B.C.” on there instead of “Dr.
Breech.”  Dr. Breech has testified that’s his form.  Yesterday the pharmacist
[Dr. Trbula] testified that’s a good form; there’s nothing wrong with that
prescription form.  The indictment says “fraudulent prescription form.”  Okay. 
So I think the legislators in their intent to note that was a separate
thing—there’s [sic] people out there, like, making checks.  That’s in my mind,
“B” is like you’re over there chucking the change and making your own checks. 
You’re making your checks.  Our legislators, that’s why they have “A” up
there.  I mean, I think the evidence substantiates “A,” but you didn’t indict
her on that.  

 

            .
. . .

 

There
is no definition of the word “form.”  Okay.  There is the definition of
“prescription” provided but not for the word “form.”  So when you don’t have a
legal definition, you go back to the common-law meaning of the definition of
“form” which is a preprinted—preprinted, without looking at Webster’s, would be
a preprinted . . . piece of document or paper that you fill in blanks, and
that’s what we have in this case.

 

Despite its apparent
agreement with Avery’s argument in her motion for directed verdict, the trial
court denied the motion without explanation.  The jury subsequently convicted
Avery of the charged offense, and the trial court sentenced her to twenty-five
years’ confinement with a $1,500 fine.  This appeal followed. 

II.           
Standard of Review

We treat a challenge to
the denial of a motion for directed verdict as a challenge to the legal
sufficiency of the evidence.  See Williams v. State, 937 S.W.2d 479, 482
(Tex. Crim. App. 1996); see also Trevino v. State, Nos. 13-09-00511-CR
& 13-09-00512-CR, 2010 Tex. App. LEXIS 6751, at *3 (Tex. App.–Corpus
Christi Aug. 19, 2010, no pet.) (mem. op., not designated for publication).  To
assess whether the evidence supporting the verdict is sufficient, we consider
all the evidence in the record in the light most favorable to the jury’s
verdict and determine whether a rational jury could have found the defendant
guilty of all the elements of the crime beyond a reasonable doubt.  Brooks
v. State, 323 S.W.3d 893, 898-99 (Tex. Crim. App. 2010) (plurality opinion)
(citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Hooper v.
State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  

We measure the
sufficiency of the evidence by the elements of the offense as defined by a
hypothetically correct jury charge.  Grotti v. State, 273 S.W.3d 273,
280-81 (Tex. Crim. App. 2008).  The hypothetically correct jury charge in this
case would have required the jury to find that: (1) on or about January 15,
2009; (2) Avery knowingly; (3) possessed, obtained, or attempted to possess or
obtain; (4) an increased quantity of a controlled substance; and (5) through
use of a fraudulent prescription form.  See Tex. Health & Safety Code Ann. § 481.129(a)(5)(B).  

A person acts knowingly, or with knowledge, with respect to
the nature of his conduct or to circumstances surrounding his conduct when he
is aware of the nature of his conduct or that the circumstances exist.  A
person acts knowingly, or with knowledge, with respect to the result of his
conduct when he is aware that his conduct is reasonably certain to cause the
result.

 

Tex. Penal
Code Ann. § 6.03(b) (Vernon 2003).  Knowledge may be inferred from a
person’s acts, words, and conduct.  Hart v. State, 89 S.W.3d 61, 64
(Tex. Crim. App. 2002); Martinez v. State, 833 S.W.2d 188, 196 (Tex. App.–Dallas
1992, pet. ref’d).  

In addition, “when the
statute defines alternative methods of manner and means of committing an
element and the indictment alleges only one of those methods, ‘the law’ for
purposes of the hypothetically correct charge, is the single method alleged in
the indictment.”  Gollihar v. State, 46 S.W.3d 243, 255 (Tex. Crim. App.
2001) (citing Curry v. State, 30 S.W.3d 394, 405 (Tex. Crim. App. 2000));
see Jacobs v. State, 230 S.W.3d 225, 230 (Tex. App.–Houston [14th Dist.]
2006, no pet.) (“Because the indictment alleges only one of those methods—theft
by deception—appellant could be convicted only if he committed theft by that
method.”).  Thus, the State was required to prove that Avery procured or
attempted to procure Lortab “through use of a fraudulent prescription form” and
cannot rely on the alternative methods of manner and means described in section
481.129(a)(5)(A).  See Tex. Health
& Safety Code Ann. § 481.129(a)(5)(A).  

III.          
Analysis

In her sole issue, Avery contends
that the trial court erred in denying her motion for directed verdict because
the State failed to present sufficient evidence proving the manner and means of
the offense charged in the indictment.  Specifically, Avery argues that the
evidence does not demonstrate that she procured or attempted to procure Lortab
through use of a fraudulent prescription form.  She further argues that the
alteration to the form presented to the pharmacy department at the Beeville
Wal-Mart did not “result in a prescription form that was fraudulent.”  The
State asserts that Avery’s altering of the prescription form did, in fact,
“create a fraudulent prescription form”; thus, the evidence is sufficient to
sustain Avery’s conviction under section 481.129(a)(5)(B) of the health and
safety code.[7] 
See id. § 481.129(a)(5)(B).

A.   Applicable Law

Our analysis of the sufficiency
of the evidence supporting Avery’s conviction hinges upon the proper definition
of the term “fraudulent prescription form,” as described in section
481.129(a)(5)(B) of the health and safety code, and how it applies.  See id. 
The parties do not dispute that section 491.129 of the health and safety code
does not explicitly define “fraudulent prescription form.”  Thus, we must
resort to other resources to determine the proper definition of “fraudulent prescription
form.”  

When interpreting
statutes, we seek to effectuate the intent or purpose of the legislators who
enacted them.  See Camacho v. State, 765 S.W.2d 431, 433 (Tex. Crim.
App. 1989).  If the statute is clear and unambiguous, the plain meaning of the
words should be applied.  Hines v. State, 75 S.W.3d 444, 447 (Tex. Crim.
App. 2002); Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991);
see Tex. Health & Safety Code
Ann. § 1.002 (Vernon 2010) (noting that chapter 311 of the government
code applies to the construction of each provision of the health and safety
code); Tex. Gov’t Code Ann. §
311.011(a)-(b) (Vernon 2005) (“Words and phrases shall be read in context and
construed according to the rules of grammar and common usage,” unless the words
have acquired a technical or particular meaning, in which case the words shall
be construed accordingly).  If an application of the plain language would lead
to an absurd result the Legislature could not have intended, we may look to
extra-textual factors to arrive at a sensible interpretation of the statute.  See
Hines, 75 S.W.2d at 447; Boykin, 818 S.W.2d at 785-86.  However, we
must keep in mind that “[i]t would be illogical to presume that the Legislature
intended a part of the statute to be superfluous” and “the Legislature must be
understood to mean what it has expressed, and it is not for the courts to add
or subtract from . . . a statute.”  Boykin, 818 S.W.2d at 785-86.  

The court of criminal
appeals has also stated that:

“Every word of a statute is presumed to have been used for
a purpose, and a cardinal rule of statutory construction requires that each
sentence, clause, phrase[,] and word be given effect if reasonably possible. .
. .  This rule is not altered by the fact that the Legislature has not defined
a particular word or phrase, and in the absence of such a definition[,] the
words of the enactment will usually be given their ordinary meaning.”

 

Morter v. State, 551 S.W.2d 715, 718 (Tex.
Crim. App. 1977) (quoting Eddins-Walcher Butane Co. v. Calvert, 156 Tex.
587, 298 S.W.2d 93, 96 (1957)); see Campos v. State, 623 S.W.2d 657, 658
(Tex. Crim. App. 1981) (holding that when words in a criminal statute are not
defined, the words employed are given their plain meaning).

B.   Discussion  

On appeal, the State
argues that section 481.075(e) of the health and safety code guides us in
determining the proper contents of a “prescription form.”  Tex. Health & Safety Code Ann. §
481.075(e) (Vernon 2010).  Section 481.075(e) of the controlled substances act provides,
in relevant part, that: 

Each official prescription form used to prescribe a
Schedule II controlled substance must contain:

 

(1)  information provided by the
prescribing practitioner, including:

(A) the date the prescription was
written;

(B) the controlled substance
prescribed;

(C) the
quantity of controlled substance prescribed, shown numerically followed by the
number written as a word;

 

(D) the
intended use of the controlled substance or the diagnosis for which it is
prescribed and the instructions for use of the substance;

 

(E) the
practitioner’s name, address, department registration number, and the Federal
Drug Enforcement Administration number;

 

(F)  the name,
address, and date of birth or age of the person for whom the controlled
substance is prescribed; and

 

(G) if the
prescription is issued to be filled at a later date under Section 481.074(d-1),
the earliest date on which a pharmacy may fill the prescription;

 

(2)  information
provided by the dispensing pharmacist, including the date the prescription is
filled; and 

 

(3)  the
signatures of the prescribing practitioner and the dispensing pharmacist.

 

Id.  We find section 481.075(e) to be
applicable because the drug involved in this matter—Lortab—is a Schedule II
controlled substance.[8] 
See id.

A copy of the prescription form that
Avery presented was made a part of the indictment and was entered into evidence
as State’s exhibit 1.  The prescription form included, among other things:  (1)
Dr. Breech’s name, office address, phone number, and signature; (2) Avery’s
name and birth date; (3) the Federal Drug Enforcement Administration number; (4)
the date the form was signed by Dr. Breech; (5) the prescribed dosage and
strength of Lortab; and (6) security measures—numerous imprints of the word
“VOID”—meant to prevent reproductions of the form from being presented for
prescription fulfillment.  Essentially, the form contains the requirements
listed in section 481.075(e) and, thus, constitutes an “official prescription
form.”  See id.  Now, we must determine whether the changes made by
Avery constituted a forgery, misrepresentation, deception, or fraud under
section 481.129(a)(5)(A), as Avery argues, or whether the prescription form
constituted a “fraudulent prescription form” as a result of Avery’s alterations,
as argued by the State.  See Tex.
Health & Safety Code Ann. § 481.129(a)(5)(A)-(B).

In determining whether Avery’s actions fall within section
481.129(a)(5)(A) or 481.129(a)(5)(B), we first examine the prior version of
section 481.129(a)—former article 4476-15, section 4.09(a).  See id.; see
also Acts 1979, 66th Leg., R.S., ch. 90, § 6, eff. May 2, 1979
(former Tex. Rev. Civ. Stat. art.
4476-15, § 4.09(a)(3)), repealed by Act of June 14, 1989, 71st Leg.,
R.S., ch. 678, § 13(1), 1989 Tex. Gen. Laws 2230, 2942; Whitfield v. State, 784 S.W.2d 484, 486 (Tex. App.–Texarkana 1990, no pet.).  In comparing
former article 4476-15, section 4.09(a) with section 481.129(a), we observe a
significant change made by the Legislature.  Under former article 4476-15,
section 4.09(a), the Legislature bundled together manners and means involving
the procurement or attempted procurement of an increased quantity of controlled
substances by “misrepresentation, fraud, forgery, deception, or subterfuge” and
“through use of [a] fraudulent prescription form”; however, when the
Legislature enacted section 481.129(a), it separated the manner and means into
two subsections—one involving “misrepresentation, fraud, forgery, deception, or
subterfuge” (section 481.129(a)(5)(A)) and a second provision involving only
the use of “fraudulent prescription form[s]” (section 481.129(a)(5)(B)).  See
Acts 1979, 66th Leg., R.S., ch. 90, § 6, eff. May 2, 1979 (former Tex. Rev. Civ. Stat. art. 4476-15, §
4.09(a)(3) (repealed 1989); see also Tex.
Health & Safety Code Ann. §
481.129(a)(5)(A)-(B).  In repealing former article 4476-15, section
4.09(a) and replacing it with the provisions of section 481.129(a), the
Legislature clearly intended for each provision to constitute a separate
offense, rather than two sides of the same coin.  See Acts 1979, 66th
Leg., R.S., ch. 90, § 6, eff. May 2, 1979 (former Tex. Rev. Civ. Stat. art. 4476-15, § 4.09(a)(3) (repealed
1989); see also Tex. Health &
Safety Code Ann. § 481.129(a)(5)(A)-(B). 
Therefore, because the Legislature separated the manner and means
through the enactment of section 481.129(a), we are not persuaded by the State’s
argument that Avery’s changing of the valid prescription form created a
“fraudulent prescription form.”  To so hold would render section
481.129(a)(5)(A) superfluous, which would be contrary to the Legislature’s
intent.[9] 
See Tex. Health & Safety Code
Ann. § 481.129(a)(5)(A)-(B); see also Boykin, 818 S.W.2d
at 785-86 (stating that we are to interpret statutes so as to not render
provisions superfluous).  

Based on our review of the
predecessor statute to section 481.129(a) and governing case law, we believe
that the Legislature intended for section 481.129(a)(5)(B) to apply to those
instances where, for example, an individual has created his own prescription
form, filled out the entire prescription form, and presented it to a pharmacy
for fulfillment—an act that would essentially render a prescription form
invalid at all relevant time periods.  See Tex. Health & Safety Code Ann. § 481.129(a)(5)(B).  Section
481.129(a)(5)(A) appears to apply to instances, such as in this case, where an
individual makes a modification to an otherwise valid prescription form. 
Though the terms “misrepresentation,” “fraud,” “forgery,” and “deception” are
not defined in the health and safety code, we believe that Avery’s actions in
this case coincide more with section 481.129(a)(5)(A).  See id. §
481.129(a)(5)(A).  

As noted earlier, if terms are not clearly defined in the
code, we are to apply the plain and common meaning of the words so long as the
interpretation does not lead to an absurd result that the Legislature could not
have intended.  See
Hines, 75 S.W.2d at
447; Boykin, 818 S.W.2d at 785-86.  “[F]raud” is defined as “[a] knowing misrepresentation of the
truth or concealment of a material fact to induce another to act to his or her
detriment.”  Black’s Law Dictionary
731 (9th ed. 2009); see Merriam
Webster’s Collegiate Dictionary 464 (10th ed. 1996) (defining “fraud” as
“an act of deceiving or misrepresenting . . . .”).  On the other hand,
“misrepresentation” is defined as “[t]he act of making a false or misleading
assertion about something . . . with the intent to deceive.”  Black’s Law Dictionary at 1091; see
Merriam Webster’s Collegiate Dictionary
at 744 (defining “misrepresentation as giving “a false or misleading
representation . . . with an intent to deceive or be unfair . . . .”). 
Further, the common definition of “forgery” is “[t]he act of fraudulently
making a false document or altering a real one to be used as if genuine . . .
.”  Black’s Law Dictionary at
722; see Merriam Webster’s
Collegiate Dictionary at 457 (defining “forgery” as “the crime of
falsely and fraudulently making or altering a document”).  And, finally,
“deceit” is defined as “[t]he act of intentionally giving a false impression.” 
Black’s Law Dictionary at 465; see
Merriam Webster’s Collegiate Dictionary
at 298 (defining “deceive” as giving “a false impression”).  The change Avery
made on the prescription form most resembles a “forgery.”  See Tex. Health & Safety Code Ann. §
481.129(a)(5)(A); see also Black’s
Law Dictionary at 722; Merriam
Webster’s Collegiate Dictionary at 457.  

The testimony adduced at trial was
that the prescription form was valid when Avery left Dr. Breech’s office and
that Avery made the changes in an attempt to pass off the altered document as
the act of Dr. Breech for the purpose of acquiring an increased dosage of
Lortab.  See Black’s Law
Dictionary at 722; see also Merriam
Webster’s Collegiate Dictionary at 457.  Based on her actions, the State
should have charged Avery with violating section 481.129(a)(5)(A).  See Tex. Health & Safety Code Ann. §
481.129(a)(5)(A).  However, it chose not do so.  

Moreover, the State does not cite any
case law to support its contention that the prescription form at issue in this
case amounted to a “fraudulent prescription form.”  Based on our review, we
have only found a handful of cases involving a purported “fraudulent
prescription form,” and each appears to support this Court’s interpretation of
section 481.129(a)(5)(A) and (B).  See Beaty v. State, 156 S.W.3d 905,
906-07 (Tex. App.–Beaumont 2005, no pet.); Whitfield v. State, 784
S.W.2d 484, 485-87 (Tex. App.–Texarkana 1990, no pet.); see also Greer v.
State, No. 2-09-087-CR, 2010 Tex. App. LEXIS 5632, at **1-7 (Tex. App.–Fort
Worth July 15, 2010, pet. ref’d) (mem. op., not designated for publication); Kirby
v. State, No. 05-08-00217-CR, 2009 Tex. App. LEXIS 3990, at **2-9 (Tex.
App.–Dallas May 29, 2009, no pet.) (not designated for publication); Travis
v. State, Nos. 11-07-00204-CR, 11-07-00205-CR, 11-07-00206-CR, 2008 Tex.
App. LEXIS 5947, at **10-13 (Tex. App.–Eastland Aug. 7, 2008, pet. ref’d) (mem.
op., not designated for publication).  In most of the cases, the defendant was
charged with both (1) forging, misrepresenting or engaging in fraud, see
Tex. Health & Safety Code Ann.
§ 481.129(a)(5)(A), and (2) utilizing a “fraudulent prescription form” to
obtain an increased amount of a controlled substance.  See id. §
481.129(a)(5)(B); Beaty, 156 S.W.3d at 906; Whitfield, 784 S.W.2d
at 486; see also Travis, 2008 Tex. App. LEXIS 5947, at *1.  Unlike
the instant case, the State in Beaty, Whitfield, and Travis
did not constrain itself to one manner or means of committing the charged
offense, which allowed for the convictions to be sustained under either section
481.129(a)(5)(A) or section 481.129(a)(5)(B).  See Beaty, 156 S.W.3d at
906; Whitfield, 784 S.W.2d at 486; see also Travis, 2008
Tex. App. LEXIS 5947, at *1.  

Of the above-mentioned cases, only
two involved instances in which the defendants were charged solely under
section 481.129(a)(5)(B).  See Greer, 2010 Tex. App. LEXIS 5632, at
**1-7; Kirby, 2009 Tex. App. LEXIS 3990, at **2-9.  As such, these cases
warrant additional discussion.  Moreover, the fact patterns in Beaty and
Whitfield cases are also instructive in our analysis of Avery’s issue.

1.   
The Greer case

 

In Greer, the defendant was
charged with “knowingly possessing or attempting to possess or obtain a
controlled substance through the use of a fraudulent prescription.”  2010 Tex.
App. LEXIS 5632, at *2.  In affirming the defendant’s conviction, the Fort
Worth Court of Appeals noted that the evidence showed that the defendant
presented a fraudulent prescription for 120 pills of Lortab at a Denton County
Walgreen’s.  Id. at *4.  The Court noted that the prescription was
fraudulent because it was for an unknown “Jason Martin”; “it was for six times
the normal prescription amount”; and “it was created to look like a
prescription form from the doctor who purportedly wrote it.”  Id. at
*4.  Essentially, the Court concluded that the prescription form was fraudulent
because the defendant had re-created a prescription form to look like another
written by a licensed doctor.  See id. at *4.  

In the instant case, Avery did not
re-create a prescription form or change the name on the prescription to refer
to a fictitious person; instead, she made a change to the dosage strength of a
valid prescription form that was created by Dr. Breech.  The record in this
case demonstrates that had Avery not changed the dosage strength, the
prescription would have been filled given that all aspects of the prescription
form were valid.

2.   
The Kirby case

 

In Kirby, the defendant was
charged with “intentionally and knowingly obtain[ing] or attempt[ing] to obtain
a controlled substance . . . by fraud through use of a fraudulent prescription
form.”  2009 Tex. App. LEXIS 3990, at *2.  The facts revealed that the
defendant presented a pharmacy technician with a prescription form for “eight
ounces of Promethazine with codeine and twenty Veetid antibiotic tablets.”  Id. 
The pharmacy technician was suspicious of the form and showed it to the on-duty
pharmacist.  The on-duty pharmacist was also suspicious because:  (1) the
prescription form “had a different background and color than most other
prescriptions, and looked like a photocopy”; (2) “the antibiotic Veetid had not
been manufactured under that name for six years because the company had gone
out of business”; (3) the pharmacist had received valid prescriptions from the
prescribing doctor “but those ‘scripts’ were on white paper with a different
font size and style”; and (4) “a fraudulent prescription had been presented to
him about ten days earlier that was on the same paper and was represented to be
from the same doctor.”  Id. at **3-4.  The pharmacist did not fill the prescription
and contacted the prescribing doctor’s office manager about the form.  Id.
at **4-5.  The prescribing doctor’s office manager told the pharmacist that the
form was fraudulent because it was not in the doctor’s handwriting and it did
not contain the doctor’s signature.  Id. at *5.  She further testified
that the doctor had stopped using the particular prescription form that was
tendered; that the defendant had never been one of the doctor’s patients; and
that the doctor had never written a prescription for the defendant.  Id. 


Though Kirby’s appellate argument
centered on whether the evidence was factually sufficient to establish that he
was the individual who presented the purported “fraudulent prescription form”
to the pharmacy, the Dallas Court of Appeals concluded that the evidence
supporting the defendant’s conviction for obtaining or attempting to obtain a
controlled substance by fraud through use of a fraudulent prescription form was
sufficient.  Id. at **8-9.  Implicit in this ruling is that a form
becomes a “fraudulent prescription form” when an individual re-creates an
entire prescription form and attempts to use the newly-created prescription
form to obtain a controlled substance.  This is so because the State only
charged Kirby with a section 481.129(a)(5)(B) offense; the jury convicted; and
the Dallas Court of Appeals affirmed when it could have reversed the conviction
by concluding that Kirby engaged in the fraudulent activities prescribed in
section 481.129(a)(5)(A).  See Tex.
Health & Safety Code Ann. § 481.129(a)(5)(A).  

In this case, Avery merely changed
one term of an otherwise valid prescription form.  Dr. Breech testified at
trial that he prescribed Lortab for Avery, albeit the lowest dosage possible,
whereas the doctor in Kirby had never treated the defendant nor written
a prescription for him.  Kirby, 2009 Tex. App. LEXIS 3990, at *5.  In
addition, both Dr. Breech and Dr. Trbula testified that the form tendered was
an ordinary prescription form and was valid, though it contained a change in the
dosage strength.  Avery’s prescription form was signed by Dr. Breech and
contained the necessary information outlined in section 481.075(e).  See
Tex. Health & Safety Code Ann.
§ 481.075(e).  One can hardly say that the prescription form tendered by Avery
resembles the clearly fraudulent prescription form at issue in Kirby.  See
Kirby, 2009 Tex. App. LEXIS 3990, at **3-4.  

3.   
The Beaty case

 

The defendant in Beaty was
charged under two separate indictments for having obtained controlled
substances, Lortab and Xanex, by forgery, under section 481.129(a)(5)(A) and
(B) of the health and safety code.  156 S.W.3d at 906.  The defendant brought a
written prescription to a Wal-Mart pharmacy located in Livingston, Texas.  Id.
at 906-07.  The prescription form indicated that Achi Chary, M.D. had issued it
on January 22, 2003, to “Laura Green” for Lortab and Xanex.  Id. at
907.  At trial, Dr. Chary testified that he had never treated a “Laura Green”
and that he had never written a prescription for “Laura Green.”  Id. 
Dr. Chary further testified “that a blank prescription pad was stolen from his
office” and that “anyone could have forged the ‘Laura Green’ prescription.”  Id. 
Dr. Chary recalled treating and prescribing similar medications for the
defendant about a week before this prescription form was presented.  Id. 


On appeal, the defendant argued that
the evidence was insufficient to establish that she “knew that the prescription
form used to obtain the controlled substance was forged.”  Id. at 906. 
In concluding that the evidence supporting the defendant’s conviction was
sufficient, the Beaumont Court of Appeals held that the jury could reasonably
infer that the defendant “presented the ‘Laura Green’ prescription to the
Wal-Mart pharmacy with full knowledge that the prescription was not the act of
Dr. Chary.”  Id. at 910.

Unlike the instant case, the jury in Beaty
inferred that the defendant stole a prescription pad from Dr. Chary’s office and
then filled out a prescription for similar medications that were received about
a week earlier, while using the alias “Laura Green.”  See id. at 907. 
In fact, the Beaty defendant filled out the entire prescription form
that was presented at the Wal-Mart pharmacy in Livingston.  Id. at
906-07.  In this case, Dr. Breech filled out the entire prescription form, and when
Avery left Dr. Breech’s office, she had a valid prescription form.  However,
before she presented it to the Wal-Mart pharmacy in Beeville, she made a single
change to the dosage strength.  Clearly, the prescription form in this case
does not involve the use of a stolen prescription pad, and Avery did not fill
out the entire prescription form herself.  Like Greer and Kirby,
the Beaty court appears to conclude that the use of a “fraudulent
prescription form” involves a form that defendants create or fill out entirely
by themselves to facilitate the procurement of a controlled substance.[10]  See id.
at 910; see also Greer, 2010 Tex. App. LEXIS 5632, at *4; Kirby,
2009 Tex. App. LEXIS 3990, at **3-4.  

4.   
The Whitfield case

 

The Texarkana Court of Appeals’
decision in Whitfield is important in that it involves a conviction for
obtaining a controlled substance by forgery under the predecessor statute to
section 481.129 of the health and safety code—former article 4476-15, section
4.09(a)(3) of the Texas Revised Civil Statutes.  784 S.W.2d at 486.  Under
former article 4476-15, section 4.09(a)(3), it was unlawful for any person to
knowingly or intentionally “acquire, obtain, or attempt to acquire or obtain
possession of a controlled substance by misrepresentation, fraud, forgery,
deception, or subterfuge, or through use of fraudulent prescription form or
fraudulent oral or telephonically communicated prescription.”  Id.
(citing Acts 1979, 66th Leg., R.S., ch. 90, § 6, eff. May 2, 1979 (former Tex. Rev. Civ. Stat. art. 4476-15, §
4.09(a)(3) (repealed 1989))).  Testimony at trial revealed that Whitfield
forged an entire prescription and gave another individual $50 to go to the drug
store and get the prescription filled.  Id. at 487.  Specifically, the Whitfield
court noted that the car that Whitfield was driving “had other prescription pads
from Dr. Haley’s office.”  Id.  Ultimately, the Texarkana Court of
Appeals concluded that the evidence was sufficient to sustain Whitfield’s
conviction.  We do not find the Whitfield
case to be controlling in this matter because the Texarkana Court of Appeals
affirmed Whitfield’s conviction under former article 4476-15, § 4.09(a)(3),
which, as noted earlier, combined the manner and means described in current
sections 481.129(a) and 481.129(b).  It is not clear whether the prescription
forms used by Whitfield were valid or invalid at the time of their creation;
thus he could have been convicted for either forging the prescription form or
for using a fraudulent prescription form. 

5.   
Summary

A review of the Greer, Kirby,
Beaty, and Whitfield cases reveals that for an individual to be convicted
for using a fraudulent prescription form to procure an increased quantity of a
controlled substance, the individual must engage in acts very different from
the acts in this case—i.e., re-creating prescription forms.  See Beaty, 156 S.W.3d at 906-07;
Whitfield, 784 S.W.2d at 486; see also Greer, 2010
Tex. App. LEXIS 5632, at *4; Kirby, 2009 Tex. App. LEXIS 3990, at **3-4.  Here, because the State chose to include a specific manner and means of
committing the offense, the State was obligated to prove “the single method
alleged in the indictment.”  Gollihar, 46 S.W.3d at 255; see Curry,
30 S.W.3d at 405; Jacobs, 230 S.W.3d at 230.  Viewing the evidence in
the light most favorable to the prosecution, we cannot say that a rational jury
could have found Avery guilty of a section 481.129(a)(5)(B) offense beyond a
reasonable doubt.  See Brooks, 323 S.W.3d at 898-99; see also Jackson,
443 U.S. at 319.  As such, we conclude that the evidence supporting Avery’s
conviction is insufficient and that the trial court erred in denying Avery’s
motion for directed verdict.  See Williams, 937 S.W.2d at 482; see
also Trevino, 2010 Tex. App. LEXIS 6751, at *3.  We sustain her sole issue
on appeal.       

IV.         
Conclusion

Having concluded that the
evidence is not sufficient to support Avery’s conviction for a section
481.129(a)(5)(B) offense, we reverse the case on that basis, vacate the trial
court’s judgment of conviction, and remand the case to the trial court for the
entry of a judgment of acquittal.  See Brooks, 323 S.W.3d at 904 (citing
Tibbs v. Florida, 457 U.S. 31, 41 (1982) (noting that a reversal based
on the “insufficiency of the evidence” has the same effect as a jury acquittal
“because it means that no rational fact[-]finder could have voted to convict
the defendant” and that “the prosecution has failed to produce sufficient
evidence to prove its case”)). 

                                                                                    ____________________

Rogelio Valdez

                                                                                                Chief
Justice

 

 

Dissenting Opinion by
Justice Perkes.

 

Publish. 

Tex. R. App. P. 47.2(b)

Delivered and filed the


31st day of March, 2011.

 









[1] In this case,
Avery allegedly tried to obtain an increased quantity of Lortab.  Lortab is the
trade name for hydrocodone, a controlled substance which is listed in Schedule
II of the health and safety code.  See Tex.
Health & Safety Code Ann. § 481.032 (Vernon 2010); see also Smith
v. State, No. 2-07-125-CR, 2008 Tex. App. LEXIS 4779, at **4-5 (Tex.
App.–Fort Worth June 26, 2008, pet. ref’d) (mem. op., not designated for
publication) (noting that Lortab contains hydrocodone and that hydrocodone is
listed in Schedule II); Beaty v. State, 156 S.W.3d 905, 906 n.2 (Tex.
App.–Beaumont 2005, no pet.) (stating that Lortab is a Schedule II controlled
substance because it contains hydrocodone); Tilson v. State, No.
05-96-00292-CR, 1998 Tex. App. LEXIS 4789, at *2 (Tex. App.–Dallas Aug. 6,
1998, no pet.) (mem. op., not designated for publication) (same); United States
Dep’t of Justice,  Drug Enforcement Admin., Drugs and Chemicals of Concern: 
Hydrocodone, available at http://www.deadiversion.usdoj.gov/drugs_concern/hydrocodone/hydrocodone.htm
(last visited Feb. 8, 2011); Drugs.com, Lortab, available at http://www.drugs.com/lortab.html
(last visited Feb. 8, 2011) (describing Lortab as a combination of
acetaminophen and hydrocodone).  

 





[2] The indictment
contained two enhancement paragraphs alleging Avery’s prior felony convictions
for forgery and burglary of a habitation, both of which the trial court
ultimately determined were “true.”  Because she had been twice convicted of
felonies and the offense in this case was a third-degree felony, Avery was
subject to the punishment range associated with first-degree
felonies—confinement for five to ninety-nine years or life.  See Tex. Penal Code Ann. § 12.32(a) (Vernon
Supp. 2010) (outlining the punishment range for first-degree felonies); see
also id. § 12.42(b) (Vernon Supp. 2010) (“[I]f it is shown on the trial of
a second-degree felony that the defendant has been once before convicted of a
felony, on conviction he shall be punished for a first-degree felony.”). 

 





[3] Dr. Breech
testified that Avery had reoccurring pain in her knee and her ankle that had
previously required surgery.

 





[4] Stephani Trbula,
M.D., the Wal-Mart pharmacist on duty, was shown the prescription form that
Avery presented to the pharmacy department at the Beeville Wal-Mart and
described it as follows:

 

Where the original
prescription was written, there was [sic] cross-out marks and then the actual
strength had been written over a couple of times so that it was darker
throughout the cross-out mark.  And then above that, there were parentheses
that said “seven-point-five.”  And so it had been altered and so I wasn’t sure
who made the alterations or what the true strength was. 

 

She further noted
that:

 

[Munoz] had wrote
[sic] the “seven-point-five” in parentheses above the original strength of the
medication because when she scanned it into our computer, you couldn’t read
it.  Because of the erasure marks, you couldn’t see the strength on our digital
screen.  So she had written it in parentheses to let me know that that’s what
it said but that she did not make any of the cross-out marks or any of the
darkening on the actual image.





 

[5]
The “seven-point-five” notation refers to the dosage strength of the prescribed
Lortab.

 





[6] On
cross-examination, Dr. Trbula stated that if people manufactured their own
prescription forms and then presented them for fulfillment, the forms would be
“fraudulent prescription forms.”  She also acknowledged that the prescription
form in this case was Dr. Breech’s form and that the form, itself, was not a
fraudulent prescription form.  Instead, she testified that the form merely
contained an unauthorized alteration.





[7] At the outset of
our analysis, we note that the State has not cited to any relevant authority to
support its position on appeal.





[8] See supra
note 1.





[9] Section
481.129(a)(5)(A) would be superfluous if we agreed with the State’s argument
because all prescriptions require the presentment of a prescription form or
order and, according to the State’s reasoning, any attempts to alter, change,
or re-create a prescription form would make the form a “fraudulent prescription
form,” rendering the acts criminalized in section 481.129(a)(5)(A) meaningless
or included in the “fraudulent prescription form” offense.  See Tex. Health & Safety Code Ann. §§
481.002(41) (defining a “prescription” as “an order by a practitioner to a
pharmacist for a controlled substance for a particular patient,” which includes
several identifying pieces of information), 481.075, 481.129(a)(5)(A)-(B)
(Vernon 2010).  We do not believe that such a construction reflects the intent
of the Legislature, especially considering former article 4476-15, section 4.09
previously grouped all of the manner and means together and section 481.129(a)
separated the acts into unique divisions that each are separate and distinct.





[10] The dissent
suggests that the Beaty court affirmed Beaty’s conviction under section
481.129(a)(5)(B)—the fraudulent prescription form provision.  However, we note
that Beaty was charged by indictment with both forging a prescription and using
a fraudulent prescription form under sections 481.129(a)(5)(A) and
481.129(a)(5)(B).  See Beaty v. State, 156 S.W.3d 905, 906 (Tex.
App.–Beaumont 2005, no pet.).  On appeal, Beaty only challenged the sufficiency
of the evidence indicating that she presented the prescription form to the
Wal-Mart pharmacy with full knowledge that the prescription was not the act of
the doctor, or in other words, she merely challenged the intent prong of the
offense—a culpable mental state that is common to both offenses.  Id.; see
Tex. Health & Safety Code Ann.
§ 481.129(a)(5)(A), (a)(5)(B).  She did not argue that the State charged her
under the wrong statute.  In affirming Beaty’s conviction, the Beaumont Court
of Appeals simply concluded that Beaty acted with full knowledge that the
prescription form presented to the pharmacy was not the act of the doctor.  Beaty,
156 S.W.3d at 910.  The Beaty court did not definitively state that it
was affirming Beaty’s conviction under either section 481.129(a)(5)(A) or
section 481.129(a)(5)(B).  To that end, we do not believe that the Beaty
case supports the dissent’s position.